# EXHIBIT A

EXHIBIT A

## SELLING SOURCE, LLC

## LICENSE AGREEMENT

This License Agreement (this "Agreement") is made as of November 12, 2008 (the "Effective Date") between Selling Source, LLC, a Delaware limited liability company with offices located at 325 East Warm Springs Road, Suite 200, Las Vegas, Nevada 89119 ("Licensor"), and Quasar Corporate Services, Inc. d/b/a Trendsact, Red River Ventures, LLC, Arrowhead Ventures, LLC, and all their principals, shareholders, affiliates and subsidiaries and persons or entities in which they have a beneficial interest, now or hereafter created, located at 325 East Warm Springs Road, Suite 103, Las Vegas, Nevada 89119 ("User"). By installing or using the Source Code (as defined below), User agrees to pay all associated license fees established by Licensor and to accept each of the terms, conditions and covenants set forth herein. The Agreement replaces in its entirety any previous agreements concerning the Software.

1. **Definitions.**

As used in this Agreement:

1.1 "Software" means: (i) eCash Version 3.5.6.1 in source code form; (ii) any revisions or updates provided by Licensor to the User, pursuant to the terms of this Agreement; (iii) any Documentation as defined herein; and (iv) shall mean the human readable embodiment of the underlying computer programming code of Licensor (including all modules contained therein, data files and structures, header and include files, macros, object libraries, interface definition files, and scripts used to control compilation and installation of an executable file). Notwithstanding the foregoing, the Software shall not include any third party computer programs.

1.2 "Documentation" shall mean any materials related to the Software provided by Licensor to User for use in connection with the Software.

1.3 "Designated Hardware" means the computer equipment specified on Schedule A to this Agreement.

1.4 "Designated Site" shall mean the facility of facilities located at 325 East Warm Springs Road, Suite 103, Las Vegas, Nevada 89119 or any other site as notified in writing by the User and agreed to in writing by the Licensor from time to time. Licensor's consent will not be unreasonably withheld.

1.5 "Licensed Territory" means the United States of America and its territories.

1.6 "Use" means copying all or any portion of the Software from storage units or media into the Designated Equipment and/or transmitting the Software to the Designated Hardware for the purpose of processing the instructions or statements contained in the Software.

1.7  "Agreement" shall mean this document and all of the annexed schedules and exhibits, together with any future written and executed amendments.

1.8  "Derivative Works" means any software programs which are developed by User and which incorporate or contain modifications of any part of the Software or Source Code, and including any revision, modification, translation (including compilation or recapitulation by computer), abridgment, condensation, expansion or any other form in which the Software or Source Code, may be recast, transformed or adapted.

2.  License and Restrictions.

a.  Grant of License. Licensor hereby grants to User a personal, non-transferable, non-exclusive limited license to install and use the Software solely on the Designated Hardware, solely for processing relating to the internal operations of User, solely at the Designated Site, in the Licensed Territory, and any and all information and materials concerning such Software disclosed by Licensor to User.

b.  Licensed Territory.

License Fee. User shall pay Licensor the fees on Schedule B attached hereto. All payments will be due within seven (7) days of the date of invoice. Any amount not timely paid shall bear interest at the prime rate of interest as published in the Money Rates column of The Wall Street Journal (or such lesser amount as may be the maximum permitted by law) for each month or portion thereof during which it shall remain unpaid.

Taxes. All amounts payable pursuant to this Agreement are exclusive of all federal, state, local, municipal, or other excise, sales, use, property or similar taxes and fees (but not any income tax or any tax on or measured by income), now in force or enacted in the future, and all such taxes and fees shall be paid by the User. The User shall obtain and provide to Licensor any certificate of exemption or similar document required to exempt any transaction under this Agreement from sales tax, use tax, or other tax liability.

c.  Restrictions. No right is granted to User hereunder to:

(i)  permit, authorize, license or sublicense any third party to view or use the Source Code;

(ii)  sell, distribute or otherwise transfer the Derivative Works;

(iii)  use Software in any manner not specifically permitted under this Agreement;

(iv)  store, backup, archive, use, modify or create works derivative of the Source Code at any location other than the Designated Site which shall be on a controlled, secure area or system to which access is limited to those employees of User that have a need to know such information and who have entered into written

confidentiality agreements with User which protect third party information to the degree necessary to comply with the provisions of this Agreement; or

   (v) store or transmit the Source Code on or through the Internet.

In addition, no right is granted under any patents, copyrights, trade secrets, trademarks or other proprietary rights of Licensor, except as expressly granted herein.

 d. <u>No Support</u>. User shall not be entitled to receive any support or maintenance services from Licensor with respect to the Source Code.

 e. <u>Delivery</u>. Licensor shall provide User with one (1) copy of the Source Code, which shall include all information reasonably necessary for User to assemble, compile, link or otherwise "build" an executable version of the Source Code.

 f. <u>Inspection</u>. Licensor shall have the right to inspect, during regular business hours and upon reasonable prior written notice, the Designated Site at which the Software is used, stored, and records kept.

 g. <u>User Responsibilities</u>. User shall be exclusively responsible for the testing, supervision, management, and control of its use of the Software, including, but without limitation: (1) assuring proper machine configuration, audit controls, and operating methods; (2) establishing adequate back-up plans, based on alternative procedures and access to qualified programming personnel; and (3) implementing sufficient recovery procedures and checkpoints to satisfy its requirements for security and accuracy of input and output as well as restart and recovery in the event of malfunction.

 3. **Ownership.**

 a. <u>Software and Source Code</u>. User acknowledges and agrees: (a) that Licensor shall retain and own all right, title and interest in and to the Software and the Source Code; (b) that User has no right, title or interest in the Software or the Source Code except for the license rights expressly granted herein; and (c) that the Software and the Source Code shall remain the exclusive property of Licensor and Licensor's successors and assigns.

 b. <u>Derivative Works</u>.

   (i) User acknowledges and agrees that all Derivative Works (as defined below) are "works made for hire" for the benefit of Licensor, and all rights, title and interest in and to the Derivative Works, including, without limitation, all Intellectual Property Rights (as defined below) therein shall be solely and exclusively owned by Licensor. As used in this Agreement, **"Derivative Works"** means any software programs which are developed by User and which incorporate or contain modifications of any part of the Software or Source Code, and including any revision, modification, translation (including compilation or recapitulation by computer), abridgment, condensation, expansion or any other form in which the Software or Source Code, may be recast, transformed or adapted. As used in this Agreement, **"Intellectual Property**

3

Rights" means all intellectual property, industrial property and other intangible rights arising under the laws of any country, including without limitation, all (A) rights with respect to patents and patent applications and similar rights (including utility patent, design patent and utility model rights), (B) rights with respect to copyrights, trademarks (including goodwill), databases and mask works, and any applications, registrations and other rights with respect thereto, and (C) rights with respect to trade secrets, confidential information, technology and know-how.

(ii) If any Derivative Works are not deemed works made for hire, User hereby assigns all right, title and interest in and to the Derivative Works to Licensor, including all Intellectual Property Rights therein, and Licensor shall solely and exclusively own all rights, title and interest in and to any and all such Derivative Works, and all Intellectual Property Rights therein.

(iii) User shall perform all reasonable acts, and execute all documents, at the expense of Licensor, reasonably necessary to evidence and secure the rights granted to Licensor in this Section 3(b). User shall provide a copy of all Derivative Works to licensor within thirty (30) days after the creation of such works.

4. Indemnity. User agrees to defend, indemnify and hold harmless Licensor from and against any damages, costs and expenses (including, without limitation, reasonable attorneys fees and costs) arising from or relating to any third party claims, actions or demands that the sale, distribution or other transfer of any Derivative Works by User or its distributors or resellers infringes the Intellectual Property Rights of any third party. The foregoing shall only apply to any such claims that would not have occurred but for User's modifications to the Source Code. Notwithstanding the foregoing, User shall not settle any such claim, demand or action affecting Licensor's Intellectual Property Rights without the prior written consent of Licensor.

5. Warranty and Disclaimer.

(a) Warranty. Licensor warrants that it has all right, power and authority to enter into this Agreement and to grant the licenses granted hereunder.

(b) Disclaimer. EXCEPT AS SET FORTH IN SECTION 5(a) ABOVE, LICENSOR MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE SOURCE CODE. ALL EXPRESS OR IMPLIED REPRESENTATIONS AND WARRANTIES, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NONINFRINGEMENT, IS HEREBY EXPRESSLY DISCLAIMED. USER SPECIFICALLY ACKNOWLEDGES THAT THE SOURCE CODE IS PROVIDED "AS IS" AND MAY HAVE BUGS, ERRORS, DEFECTS OR DEFICIENCIES.

5A. Warranties of User

User represents and warrants to Licensor that:

(i) User has all power and authority to enter into this Agreement and has duly and validly authorized this Agreement;

(ii) User shall be duly licensed in the United States to offer the Loan Related Products by all applicable federal and/or state regulatory agencies and/or bodies, and shall immediately remedy the suspension, termination or other loss of such licenses;

(iii) User shall be in good standing in the state, territory or other jurisdiction where incorporated, formed or organized;

(iv) User agrees and acknowledges that it, as well as any and all Loan Related Products, will comply with all applicable federal and/or state laws, rules, regulations, court orders, judgments and decrees including, but not limited to, laws relating to usury;

(v) User shall charge at or below the interest rate limits mandated by any state or US jurisdiction in connection with the Loan Related Products; and

(vi) User shall immediately notify Licensor, and immediately remedy same, if User receives notice of any complaints, inquiries or investigations related to usury, the legality of "pay-day loans," the Loan Related Products or any other violations in connection with User's business, and immediately remedy same.

6. **Limitations of Remedies & Liabilities.** User and Licensor acknowledge that the following provisions have been negotiated by them, reflect a fair allocation of risk and such allocation is reflected in the fees payable to Licensor for use of the Source Code:

(a) <u>Limited Remedy.</u> User's sole and exclusive remedy for any damage or loss in any way connected with use of the Source Code, whether or not by Licensor's negligence or any breach of any other duty, shall be a refund of an equitable portion of the fees actually paid by User to Licensor with respect to the Source Code.

(b) <u>Limitations of Liability.</u>

(i) <u>General.</u> IN NO EVENT SHALL LICENSOR'S LIABILITY, IN THE AGGREGATE, FOR DAMAGES ARISING OUT OF THE USE OR LICENSING OF THE SOURCE CODE OR ARISING UNDER THIS AGREEMENT, WHETHER IN TORT, CONTRACT OR OTHERWISE, TO USER OR ANY OTHER PERSON OR ENTITY, EXCEED THE FEES ACTUALLY PAID BY USER FOR USE OF THE SOURCE CODE.

(ii) <u>Consequential Damages, Etc.</u> LICENSOR SHALL NOT BE LIABLE TO USER OR ANY OTHER PERSON OR ENTITY FOR ANY LOST PROFITS, OR CONSEQUENTIAL, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR SIMILAR DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, WORK STOPPAGE, OR COMPUTER FAILURE OR MALFUNCTION, LOSS OF WORK SOFTWARE, OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES, DIRECT OR INDIRECT,

WHETHER IN TORT, CONTRACT, OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(iii) THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 6(b) SHALL REMAIN FULLY OPERATIVE EVEN IF THE LIMITED REMEDY SET FORTH IN SE0CTION 5(a) FAILS OF ITS ESSENTIAL PURPOSE.

7. **Confidential Information.** User shall maintain in confidence and shall not disclose the Source Code or the Source Code of any Derivative Works (collectively, "**Confidential Information**") to any third party without the prior written consent of Licensor in each instance, using the same degree of care that User uses to protect its own Confidential Information of a similar nature, which shall in no event be less than a reasonable degree of care. Any breach by any employee of User of such confidentiality obligations shall be deemed a breach by User of this Agreement. User shall establish reasonably appropriate controls to protect the confidentiality of the Confidential Information and shall keep its employees informed of such controls.

8. Security. The User shall take all reasonable steps to safeguard the Software so as to ensure that no unauthorized person shall have access to them, and that no persons authorized to have access shall make any unauthorized copy. The User shall promptly report to Licensor any unauthorized disclosure or any use of any Software of which it becomes aware and shall take such further steps as may reasonably be requested by Licensor to prevent unauthorized use thereof.

9. **Termination.**

(a) Term. This Agreement shall become effective on the Effective Date, and shall remain in effect for sixty (60) months, unless earlier terminated pursuant to this Section 9. At the end of the Term, the Agreement will renew on a month to month basis unless terminated by either party upon thirty (30) days written notice.

(b) Termination for Cause. Licensor shall have the right to terminate this AGREEMENT upon written notice to User upon the occurrence of any of the following:

(i) upon the material breach of this Agreement by User, if such breach remains uncured for fifteen (15) days after written notice thereof by Licensor;

(ii) upon the acquisition of User by a competitor of Licensor if (A) all or substantially all of the assets of User or (B) any majority or controlling stock, voting or other interest in User, directly or indirectly;

(iii) upon User making any assignment for the benefit of creditors, filing a petition in bankruptcy, being adjudged bankrupt, becoming insolvent, or being placed in the hands of a receiver, or if the equivalent of any of the proceedings or acts described in this Section 9(b)(iii) occurs; or

6

   (iv) Licensor shall have the right to terminate this Agreement should User obtain short term loan leads from any source other than Licensor, its parents, subsidiaries and affiliates.

 (c) <u>Termination for Convenience</u>. Either party shall have the right to terminate this Agreement upon thirty (30) days advance written notice to the other party.

 (d) <u>Effect of Termination or Expiration</u>.

   (i) If this Agreement terminated by Licensor under Section 9(b), all licenses granted to User hereunder shall immediately terminate, and User shall promptly return to Licensor any and all Source Code and Derivative Works, all copies thereof, and any materials incorporating any portion thereof, in User's or its distributors or resellers' possession or control. Furthermore, User shall promptly, and shall promptly cause its distributors and resellers to, destroy all copies of any Source Code and Derivative Works stored in any computer memory.

   (ii) If this Agreement expires or is terminated other than due to a breach of this Agreement by User, (a) all licenses granted to User hereunder shall immediately terminate; and (b) User shall promptly return to Licensor any and all Source Code and all copies thereof, and any materials incorporating any portion thereof, in User's or its distributors or resellers' possession or control, and User shall promptly, and shall promptly cause its distributors and resellers to, destroy all copies of any Derivative Works stored in any computer memory.

 **10.** **Injunctive Relief.** It is understood and agreed that User's breach of any of the provisions of this Agreement will cause Licensor irreparable damage for which recovery of money damages will be inadequate, and that Licensor will therefore be entitled to seek timely injunctive relief in addition to any and all other remedies available at law or equity.

 **11.** **Miscellaneous.**

 (a) <u>Export Regulations</u>.

 The transfer of technology across national boundaries is regulated by the United States Government. User shall not acquire, ship, transport, export or re-export the Source Code, directly or indirectly, into any country in violation of any applicable law (including, but not limited to, the United States Export Administration Act and the regulations promulgated thereunder), nor shall User use the Source Code for any purpose prohibited by such laws.

 (b) <u>Governing Law; Exclusive Jurisdiction</u>. The validity, interpretation, rights and obligations of the parties and any dispute arising under this Agreement shall be governed by the laws of the State of Nevada, U.S.A., without reference to the choice of law provisions of any jurisdiction. The state and federal courts located in the Nevada shall have exclusive jurisdiction over any dispute or controversy arising under or related to this Agreement.

(c) <u>Severability</u>. If any provision of this Agreement shall be determined to be void, invalid, unenforceable or illegal for any reason, then the validity and enforceability of all the remaining provisions hereof shall not be affected thereby.

(d) <u>Failure to Exercise Rights</u>. The failure of either party to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of any subsequent breach.

(e) <u>Titles</u>. The titles of the Sections hereof are for convenience only and do not in any way limit or amplify the terms and conditions of this Agreement.

(f) <u>Survival</u>. Except for Section 2, all Sections of this Agreement shall survive the termination or expiration of this Agreement

(g) <u>Complete Agreement</u>. This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof and supersedes any and all prior understandings, statements, warranties, representations and agreements, both oral and written, relating thereto.

(h) <u>No Assignment</u>. User may not assign any rights or delegate any obligations under this Agreement without the prior written consent of Licensor, which consent may be withheld or granted in Licensor's sole discretion. Any assignment in violation of this provision shall be void.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their authorized representatives.

Selling Source, LLC

By: _____

Name: Glenn McKay

Title: President

Date: MAR. 6/09

Quasar Corporate Services, Inc. d/b/a Trendsact, Red River Ventures, LLC, Arrowhead Ventures, LLC, and all their principals, shareholders, affiliates and subsidiaries and persons or entities in which they have a beneficial interest, now or hereafter created.

By: _____

Name: Mike Lane

Title: CEO

Date: _____

8

## SCHEDULE A

| Designated Hardware Description | Serial Number |
|---|---|
| HP Prouant DL320 65p – Quad Core Xeon X3320 | MX283000KG |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## SCHEDULE B

| Fee | Amount |
|---|---|
| eCash Implementation – Stage 2 "Go-Live" | $15,000.00 to be paid at $5,000.00 per month |
| Per Loan Origination | $1.25 per transaction to be invoiced weekly |
| Enterprise Site Costs | $.01 per visitor to the site (per impression) to be invoiced weekly |
| eMail via Trendex mail server | $.05 weekly per email sent to be invoiced weekly |
| Text Message via MSKG | $.06 per text message sent to be invoiced weekly |
| Nirvana | $.01 per event to be invoiced weekly |
| Monthly Recurring License Fee | $500.00 per month commencing on |
| Hosting at Selling Source Data Center | $262.50 per month commencing on |

10